**ORAL ARGUMENT NOT REQUESTED**
**No. 25-7144**

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT

_____

**NAMIG BAKER, ET AL.,**

*Appellants,*

**v.**

**ISLAMIC REPUBLIC OF IRAN,**

*Appellee*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

1:22-cv-02765 (Howell, J.)

_____

**AMENDED OPENING BRIEF OF APPELLANTS**

_____

Robert L. Sirianni, Jr., Esquire
BROWNSTONE, P.A.
Attorney for Appellants
PO Box 2047
Winter Park, Florida 32790
(p) 407-388-1900
(f) 407-622-1511
RobertSirianni@brownstonelaw.com

## RULE 28(A)(1) CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### a. Parties:

Appellants are -  Johnny Butler, Jr.; Sherita Sanders; Arletha Pettie; Claudia Pettie; Mecko Johnson; Jonathan James Butler; Jaylen Butler; Jada Butler; Grady Horner; Cameron Horner; Daniel Kernan; Lea Ann McCartney; James Kernan; Donald McDaniel, II; Donald McDaniel, Sr.; Shelby McDaniel; James McDaniel; Logan McDaniel; Terasa Defusto; Arik Miller; A.M.; Calandra Bailey; Tyresha Williams; Brandon Paredes; Julie Paredes; Gary Paredes; Jesse Paredes; Adam Paredes; the Estate of Nevaeh Paredes; Evan Pronzati; Andrew Vega.

Appellee is the Islamic Republic of Iran.

### b. Rulings Under Review:

Final order in 1:22-CV-02765-BAH disposing of claims against Appellants and in favor of Appellee, Dkt. 37 and 38. Entered on August 28, 2025.

### c. Related Cases:

No related cases.

*/s/ Robert L. Sirianni, Jr.*
Robert L. Sirianni, Jr., Esquire

1

## RULE 26.1 CORPORATE DISCLOSURE STATEMENT

Appellants are individuals and estates. No appellant is a nongovernmental corporation. Accordingly, no corporate disclosure statement is required under Fed. R. App. P. 26.1.

*/s/ Robert L. Sirianni, Jr.*
Robert L. Sirianni, Jr., Esquire

# **TABLE OF CONTENTS**

RULE 26.1 CORPORATE DISCLOSURE STATEMENT ......................................2

GLOSSARY OF ABBREVIATIONS ...............................................................5

JURISDICTIONAL STATEMENT ................................................................6

STATEMENT OF THE CASE..................................................................15

    A. Statutory Background ...................................................................15

    B. Proceedings Below........................................................................15

    B. Proceedings Below........................................................................16

    C. The District Court's Ruling.............................................................17

SUMMARY OF THE ARGUMENT ..............................................................18

ARGUMENT ......................................................................................20

    STANDARD OF REVIEW .................................................................20

I.    The district court erred in holding that, for purposes of 28 U.S.C. § 1605A, an attack qualifies as an act of "extrajudicial killing" only if that particular attack itself resulted in death................................................................20

II. The District Court Erred in Treating the Attacks at Issue as Separate Acts Rather than as Part of a Coordinated Terrorist Campaign...................................26

CONCLUSION....................................................................................30

CERTIFICATE OF COMPLIANCE..............................................................31

CERTIFICATE OF SERVICE ...................................................................32

3

# TABLE OF AUTHORITIES

**Cases**

*Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024) 16, 17, 20, 21, 22, 24, 28

*Cabrera v. Islamic Republic of Iran*, Civ. A. No. 19-3835 (JDB), 2022 WL 2817730, at *1 (D.D.C. July 19, 2022) ....................................................................23

*Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125 (D.C. Cir. 2017) ..................................20

*Sibley v. Islamic Republic of Iran*, No. 23-cv-600, 2025 WL 1928036 (D.D.C. July 14, 2025) .......................................................................................................................23

*Westberg v. FDIC*, 741 F.3d 1301 (D.C. Cir. 2014) ..................................................20

**Statutes**

28 U.S.C. § 1605A ............................................... 6, 7, 15, 17, 20, 21, 26, 27, 28, 29

28 U.S.C. § 1291 ...........................................................................................................6

28 U.S.C. §§ 1330(a) ............................................................................................. 6, 15

**Rules**

Fed. R. App. P. 26.1 ......................................................................................................2

Federal Rule of Civil Procedure 12(b)(1) ...................................................................6

# GLOSSARY OF ABBREVIATIONS

Islamic Republic of Iran ("Iran")

Foreign Sovereign Immunities Act's (hereinafter "FSIA")

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction under 28 U.S.C. §§ 1330(a) and 1605A. Plaintiffs brought this action against the Islamic Republic of Iran ("Iran") under the Foreign Sovereign Immunities Act's (hereinafter "FSIA") terrorism exception. Appx25.

On August 28, 2025, the district court entered an order granting in part and denying in part Plaintiffs' motion for default judgment, dismissing Appellants' claims for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), and stating: "This is a final and appealable order." Appx84-88.

Appellants timely filed a notice of appeal on September 29, 2025. Appx153. This Court has appellate jurisdiction under 28 U.S.C. §§ 1291 and 1294(1).

## STATEMENT OF THE ISSUES

1. Whether the district court erred in holding that for the purposes of 28 U.S.C. § 1605A, a terrorist attack qualifies as an act of "extrajudicial killing" only if the particular attack itself resulted in death.

2. Whether the district court erred in dismissing Appellants' claims for lack of subject-matter jurisdiction under 28 U.S.C. § 1605A by analyzing the attacks at issue as discrete, independent incidents rather than as part of a coordinated terrorist campaign carried out by the Taliban-led Syndicate and materially supported by Iran.

**STATUTES AND REGULATIONS**

28 U.S. Code § 1604

Subject to existing international agreements to which the United States is a party at the time of enactment of this Act a foreign state shall be immune from the jurisdiction of the courts of the United States and of the States except as provided in sections 1605 to 1607 of this chapter.

28 U.S. Code § 1605A

(a) In general. (1) No immunity. A foreign state shall not be immune from the jurisdiction of courts of the United States or of the States in any case not otherwise covered by this chapter in which money damages are sought against a foreign state for personal injury or death that was caused by an act of torture, extrajudicial killing, aircraft sabotage, hostage taking, or the provision of material support or resources for such an act if such act or provision of material support or resources is engaged in by an official, employee, or agent of such foreign state while acting within the scope of his or her office, employment, or agency.

(2) Claim heard. The court shall hear a claim under this section if—

(A)(i)

(I) the foreign state was designated as a state sponsor of terrorism at the time the act described in paragraph (1) occurred, or was so designated as a result of such act, and, subject to subclause (II), either remains so designated when the claim is filed under this section or was so designated within the 6-month period before the claim is filed under this section; or

(II) in the case of an action that is refiled under this section by reason of section 1083(c)(2)(A) of the National Defense Authorization Act for Fiscal Year 2008 [note to this section] or is filed under this section by reason of section 1083(c)(3) of that Act [note to this section], the foreign state was designated as a state sponsor of terrorism when the original action or the related action under section 1605(a)(7) [28 USCS § 1605(a)(7)] (as in effect before the enactment of this section [enacted Jan. 28, 2008]) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) [28 USCS § 1605 note] was filed;

(ii) the claimant or the victim was, at the time the act described in paragraph (1) occurred—

(I) a national of the United States;

(II) a member of the armed forces; or

(III) otherwise an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment; and

(iii) in a case in which the act occurred in the foreign state against which the claim has been brought, the claimant has afforded the foreign state a reasonable opportunity to arbitrate the claim in accordance with the accepted international rules of arbitration; or

(B) the act described in paragraph (1) is related to Case Number 1:00CV03110 (EGS) in the United States District Court for the District of Columbia.

(b) Limitations. An action may be brought or maintained under this section if the action is commenced, or a related action was commenced under section 1605(a)(7) (before the date of the enactment of this section) or section 589 of the Foreign Operations, Export Financing, and Related Programs Appropriations Act, 1997 (as contained in section 101(c) of division A of Public Law 104-208) [28 USCS § 1605 note] not later than the latter of—

(1) 10 years after April 24, 1996; or

(2) 10 years after the date on which the cause of action arose.

(c) Private right of action. A foreign state that is or was a state sponsor of terrorism as described in subsection (a)(2)(A)(i), and any official, employee,

or agent of that foreign state while acting within the scope of his or her office, employment, or agency, shall be liable to—

(1) a national of the United States,

(2) a member of the armed forces,

(3) an employee of the Government of the United States, or of an individual performing a contract awarded by the United States Government, acting within the scope of the employee's employment, or

(4) the legal representative of a person described in paragraph (1), (2), or (3),

for personal injury or death caused by acts described in subsection (a)(1) of that foreign state, or of an official, employee, or agent of that foreign state, for which the courts of the United States may maintain jurisdiction under this section for money damages. In any such action, damages may include economic damages, solatium, pain and suffering, and punitive damages. In any such action, a foreign state shall be vicariously liable for the acts of its officials, employees, or agents.

(d) Additional damages. After an action has been brought under subsection (c), actions may also be brought for reasonably foreseeable property loss, whether insured or uninsured, third party liability, and loss claims under life

11

and property insurance policies, by reason of the same acts on which the action under subsection (c) is based.

(e) Special masters.

(1) In general. The courts of the United States may appoint special masters to hear damage claims brought under this section.

(2) Transfer of funds. The Attorney General shall transfer, from funds available for the program under section 1404C of the Victims of Crime Act of 1984 (42 U.S.C. 10603c), to the Administrator of the United States district court in which any case is pending which has been brought or maintained under this section such funds as may be required to cover the costs of special masters appointed under paragraph (1). Any amount paid in compensation to any such special master shall constitute an item of court costs.

(f) Appeal. In an action brought under this section, appeals from orders not conclusively ending the litigation may only be taken pursuant to section 1292(b) of this title [28 USCS § 1292(b)].

(g) Property disposition.

(1) In general. In every action filed in a United States district court in which jurisdiction is alleged under this section, the filing of a notice of pending action pursuant to this section, to which is attached a copy of the complaint

filed in the action, shall have the effect of establishing a lien of lis pendens upon any real property or tangible personal property that is—

(A) subject to attachment in aid of execution, or execution, under section 1610 [28 USCS § 1610];

(B) located within that judicial district; and

(C) titled in the name of any defendant, or titled in the name of any entity controlled by any defendant if such notice contains a statement listing such controlled entity.

(2) Notice. A notice of pending action pursuant to this section shall be filed by the clerk of the district court in the same manner as any pending action and shall be indexed by listing as defendants all named defendants and all entities listed as controlled by any defendant.

(3) Enforceability. Liens established by reason of this subsection shall be enforceable as provided in chapter 111 of this title [28 USCS §§ 1651 et seq.].

(h) Definitions. For purposes of this section—

(1) the term "aircraft sabotage" has the meaning given that term in Article 1 of the Convention for the Suppression of Unlawful Acts Against the Safety of Civil Aviation;

(2) the term "hostage taking" has the meaning given that term in Article 1 of the International Convention Against the Taking of Hostages;

(3) the term "material support or resources" has the meaning given that term in section 2339A of title 18;

(4) the term "armed forces" has the meaning given that term in section 101 of title 10;

(5) the term "national of the United States" has the meaning given that term in section 101(a)(22) of the Immigration and Nationality Act (8 U.S.C. 1101(a)(22));

(6) the term "state sponsor of terrorism" means a country the government of which the Secretary of State has determined, for purposes of section 6(j) of the Export Administration Act of 1979 (50 U.S.C. App. 2405(j) [50 USCS § 4605(j)]), section 620A of the Foreign Assistance Act of 1961 (22 U.S.C. 2371), section 40 of the Arms Export Control Act (22 U.S.C. 2780), or any other provision of law, is a government that has repeatedly provided support for acts of international terrorism; and

(7) the terms "torture" and "extrajudicial killing" have the meaning given those terms in section 3 of the Torture Victim Protection Act of 1991 (28 U.S.C. 1350 note).

**STATEMENT OF THE CASE**

**A. Statutory Background**

The Foreign Sovereign Immunities Act ("FSIA") generally provides foreign states immunity from suit in United States courts, subject to specified exceptions. 28 U.S.C. §§ 1604–1605. One such exception is the terrorism exception. *Id.* § 1605A.

As relevant here, the FSIA's terrorism exception withdraws immunity in certain actions seeking money damages for personal injury or death caused by, among other things, "extrajudicial killing" or the provision of material support or resources for such an act. 28 U.S.C. § 1605A(a)(1). District courts have original jurisdiction over nonjury civil actions against foreign states as to claims for which the foreign state is not entitled to immunity. 28 U.S.C. § 1330(a).

**B. Proceedings Below**

Plaintiffs brought this action against the Islamic Republic of Iran under 28 U.S.C. § 1605A, alleging that Iran provided material support to a terrorist syndicate responsible for attacks in Afghanistan that injured or killed United States service members and, in some instances, gave rise to related family-member claims. Appx89-91.

15

The district court explained that the case involved sixty-one plaintiffs arising from sixteen separate attacks in Afghanistan between 2008 and 2012. Appx89-90. After Iran failed to appear, Plaintiffs moved for default judgment. Appx89.

While resolving Plaintiffs' motion for default judgment, the district court considered the effect of *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024), on claims arising from attacks in which no one was killed. Appx117-123. Plaintiffs argued that the attacks should instead be considered as part of a broader coordinated terrorist campaign rather than as wholly discrete events. Appx119-121.

## B. Proceedings Below

Plaintiffs brought this action against the Islamic Republic of Iran under 28 U.S.C. § 1605A, alleging that Iran provided material support to a terrorist syndicate responsible for attacks in Afghanistan that injured or killed United States service members and, in some instances, gave rise to related family-member claims. Appx89-91.

The district court explained that the case involved sixty-one plaintiffs arising from sixteen separate attacks in Afghanistan between 2008 and 2012. Appx89-91. After Iran failed to appear, Plaintiffs moved for default judgment. Appx85.

While resolving Plaintiffs' motion for default judgment, the district court considered the effect of *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C.

Cir. 2024), on claims arising from attacks in which no one was killed. Appx117-123. Plaintiffs argued that the attacks should instead be considered as part of a broader coordinated terrorist campaign rather than as wholly discrete events. Appx119-123.

## C. The District Court's Ruling

In its Memorandum Opinion, the district court rejected Appellants' argument that the attacks at issue should be treated as part of a broader coordinated terrorist campaign for purposes of 28 U.S.C. § 1605A. Instead, the court held that the sixteen terrorist attacks at issue were "separate acts." Appx122-123.

The district court held that, "[f]or a terrorist attack to qualify as an extrajudicial killing, the attack must kill someone." Appx121 (citing *Borochov* at 1060–61). The court recognized that thirty plaintiffs had shown that the attacks injuring them "each resulted in at least one fatality," but that the remaining thirty-one plaintiffs' claims were based on attacks that "resulted in no extrajudicial killing." *Id.* at 33–34.

The district court rejected Plaintiffs' argument that the attacks causing the remaining Appellants' injuries should be treated as part of a larger terrorist campaign and thus as a "single macro-attack" rather than "different micro-attacks." Appx122. Instead, the court held that "[e]ach attack, whether closely connected to other attacks or not, was a separate act." Appx122. The court further explained that "each of the

17

sixteen terrorist attacks at issue in this case are considered separate acts" and that "[f]or each attack to constitute an act of extrajudicial killing sufficient to create subject-matter jurisdiction under the FSIA's terrorism exception, each terrorist attack must have killed someone." Appx124.

Applying that reasoning, the district court concluded that subject-matter jurisdiction did not exist over the claims based on the eight attacks in which no one was killed. Appx124.  The court therefore dismissed those claims for lack of subject-matter jurisdiction. Appx85-88. The court otherwise granted in part and denied in part Plaintiffs' motion for default judgment, awarded damages to the remaining plaintiffs, closed the case, and stated that its order was "final and appealable." Appx85-88.

Now comes this appeal.

## SUMMARY OF THE ARGUMENT

The district court dismissed Appellants' claims by treating each terrorist incident as a separate act and by reading 28 U.S.C. § 1605A to require that the specific incident injuring a plaintiff must itself have resulted in a death. That rule goes beyond *Borochov v. Islamic Republic of Iran*. *Borochov* addressed a single, isolated terrorist attack that injured the plaintiffs but killed no one. It did not decide the distinct question presented here: whether, when plaintiffs allege that their injuries

arose from component attacks within a coordinated terrorist campaign that included completed extrajudicial killings, the relevant "act" under § 1605A must still be defined at the narrowest possible incident level.

Section 1605A's text does not compel the district court's atomized approach. The statute does not define the level of generality at which the relevant "act" must be identified, and it extends not only to injury caused by an act of extrajudicial killing, but also to injury caused by the provision of material support or resources for such an act. Appellants' theory fits that text. Iran allegedly provided material support to a coordinated Taliban-led campaign that included completed extrajudicial killings, and that support caused injuries throughout the campaign, including the injuries suffered by Appellants. At minimum, the statute does not foreclose that campaign-based theory.

The district court's own findings underscore why its jurisdictional ruling should be reversed. The court found that terrorist groups in Afghanistan formed a terrorist syndicate and that Iran's financial support, received by Taliban leadership and distributed throughout the organization, "undoubtedly increased the organizational capacity of the Taliban as a whole to carry out terrorist attacks." Appx127. Those findings support Appellants' position that the attacks should not have been treated as wholly unrelated micro-incidents. Instead, the district court drew a jurisdictional line between plaintiffs injured in attacks that resulted in

19

fatalities and plaintiffs injured in attacks that did not, even though both sets of claims arose from attacks plaintiffs alleged were part of the same coordinated, materially supported campaign. Appx128-152. Because *Borochov* did not foreclose that campaign-based theory, and because § 1605A does not require the district court's narrower rule, the judgment should be reversed.

## ARGUMENT

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's dismissal for lack of subject-matter jurisdiction. *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017). Questions of statutory interpretation are also reviewed *de novo. Westberg v. FDIC*, 741 F.3d 1301, 1304-05 (D.C. Cir. 2014). Because this appeal turns on the district court's interpretation and application of 28 U.S.C. § 1605A, review is de novo.

I.  **The district court erred in holding that, for purposes of 28 U.S.C. § 1605A, an attack qualifies as an act of "extrajudicial killing" only if that particular attack itself resulted in death.**

The district court held that, for purposes of 28 U.S.C. § 1605A, a terrorist attack qualifies as an act of "extrajudicial killing" only if that particular attack itself resulted in death. Appx121-124. That reading of § 1605A was erroneous. Although *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024), held that a single nonfatal

attack did not itself qualify as an act of extrajudicial killing, it did not address whether multiple attacks alleged to be part of a coordinated terrorist campaign must be treated as wholly separate acts for jurisdictional purposes.

Section 1605A withdraws sovereign immunity in any case seeking money damages "for personal injury or death that was caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). Section 1605A further provides that "extrajudicial killing" bears the meaning supplied by the Torture Victim Protection Act of 1991. Id. § 1605A(h)(7). The statute thus requires a court to identify the relevant "act" and determine whether the plaintiff's injury was caused by an act of extrajudicial killing or by material support for such an act. *See id.* § 1605A(a)(1).

*Borochov* resolved that inquiry in the context of a single terrorist attack. There, the D.C. Circuit held that § 1605A did not confer jurisdiction where the specific Jerusalem car-ramming attack that injured the plaintiffs killed no one other than the perpetrator. 94 F.4th at 1060–62. The Court reasoned that the plaintiffs' injuries were not caused by "an act of . . . extrajudicial killing" because "the terrorist attack that injured them did not kill anyone." *Id.* at 1061. At most, the perpetrator had "attempted, but failed, to commit an extrajudicial killing," which the Court held was not enough. *Id.* The Court also rejected the theory that jurisdiction could rest on

21

material support intended to facilitate an extrajudicial killing when no killing in fact resulted from that attack. *Id.* at 1060–67.

This case presents a different question. Appellants did not argue below that an attempted but unsuccessful killing, standing alone, is enough. Rather, they argued that the attacks at issue were constituent parts of a coordinated Taliban-led terrorist campaign in Afghanistan that was materially supported by Iran and that indisputably included killings. Appx119-124. *Borochov* did not address that campaign-based theory. The opinion repeatedly addressed "the attack that injured the Golans," "the terrorist attack that injured them," and whether "that attack" killed anyone. 94 F.4th at 1060–61. It did not address whether closely related attacks carried out by the same coordinated terrorist network, in the same theater of war, as part of the same sustained campaign, must always be severed into wholly independent jurisdictional units.

The statutory text also provides an additional reason the district court's atomized approach was too narrow. Section 1605A(a)(1) withdraws immunity in an action seeking money damages for personal injury or death "that was caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). The statute does not say the plaintiff's injury must be caused by the same incident in which the killing occurred. It says the injury must be caused by material support for such an act. Appellants' theory is that Iran provided

material support to a coordinated Taliban-led campaign that included attacks the district court held satisfied the extrajudicial-killing requirement, and that the same materially supported campaign caused both fatal and nonfatal injuries. Even if *Borochov* forecloses treating a nonfatal incident, standing alone, as an "act of extrajudicial killing," it does not foreclose jurisdiction where the injuries were caused by material support for a campaign that included completed extrajudicial killings.

That distinction matters here because the broader Afghanistan litigation has proceeded on the theory that the Taliban, the Haqqani Network, al-Qaeda, and related groups operated as a coordinated "Syndicate" engaged in an extended terrorist campaign against American servicemembers and civilians in Afghanistan. *See, e.g., Cabrera v. Islamic Republic of Iran*, Civ. A. No. 19-3835 (JDB), 2022 WL 2817730, at *1 (D.D.C. July 19, 2022); Appx119-124. In *Cabrera*, the district court found that, "[b]etween 2006 and 2019, a terrorist syndicate comprising, among other groups, al-Qaeda, the Taliban, and the Haqqani Network perpetrated numerous terrorist attacks against American servicemembers and civilians in Afghanistan," and that the bellwether attacks were "part of an extended terrorist campaign by the Taliban-led Syndicate." *Cabrera, 2022 WL 2817730*, at *6, *138.

That same focus on organizational reality appears in *Sibley v. Islamic Republic of Iran*, No. 23-cv-600, 2025 WL 1928036 (D.D.C. July 14, 2025), which the Baker

23

court discussed in addressing causation. *See* Appx124-130. *Sibley* did not address the campaign-based jurisdictional question presented here, but in evaluating proximate cause, it emphasized that Iranian support to the Taliban could not be treated as a substantial factor in every later attack without regard to the Taliban's dispersed and at times decentralized structure, the component that received the support, and the form of support at issue. Appx124-130. That reasoning supports Appellants' point here: when identifying the relevant "act" under § 1605A, the court should attend to the organization's real operational structure rather than impose an artificially atomized view of events

The district court nonetheless held that *Borochov* required it to treat the sixteen attacks in this case as "separate acts," such that "[f]or each attack to constitute an act of extrajudicial killing sufficient to create subject-matter jurisdiction under the FSIA's terrorism exception, each terrorist attack must have killed someone." Appx124. But that is the very point in dispute. Nothing in the text of § 1605A expressly answers whether, in a case alleging a coordinated campaign of terrorist violence, the relevant "act" must always be treated as each individual attack rather than at a broader campaign level. And *Borochov* did not purport to resolve that campaign-based question. It held only that, where the only alleged act is a single attack that injured the plaintiffs and killed no one, § 1605A does not supply jurisdiction. 94 F.4th at 1060–67.

At minimum, then, the district court erred in treating *Borochov* as foreclosing Appellants' position. Appellants' argument was not that a nonfatal attack is itself an "extrajudicial killing." Their argument was that the attacks injuring them were alleged to be part of a coordinated terrorist campaign, materially supported by Iran, that included extrajudicial killings and that should not have been atomized into wholly unrelated "micro-attacks" for jurisdictional purposes. Appx119-124. Because the district court rejected that argument solely by extending *Borochov* beyond the single-attack context it addressed, the dismissal should be reversed and the case remanded for further proceedings.

Nor does Borochov's completed-act analysis foreclose jurisdiction here. *Borochov* held that the material-support provision requires a completed predicate act. 94 F.4th at 1063–64. That requirement is satisfied here because the district court held that the extrajudicial-killing requirement was satisfied for the plaintiffs whose attacks each resulted in at least one fatality. Appx121-124. The remaining question is whether, for purposes of § 1605A, the relevant "act" must be confined to each isolated attack or may be understood as the coordinated, materially supported campaign of which those attacks formed a part.

25

**II. The District Court Erred in Treating the Attacks at Issue as Separate Acts Rather than as Part of a Coordinated Terrorist Campaign.**

The district court rejected Plaintiffs' argument that the attacks at issue should be considered in the context of a broader coordinated terrorist campaign and instead held that "each of the sixteen terrorist attacks at issue in this case are considered separate acts." Appx124. That conclusion was erroneous.

Section 1605A withdraws immunity in an action seeking money damages for personal injury or death "that was caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). The statute does not specify the level of generality at which the relevant "act" must be defined in every case. Nor does it state that, where plaintiffs allege a coordinated terrorist campaign carried out by the same interrelated network and materially supported by the same foreign state, each violent incident must be severed and evaluated in complete isolation from the larger campaign of which it is alleged to be a part.

The district court's own dictionary analysis does not resolve the issue in Iran's favor. The court relied on definitions of "act," "attack," "campaign," and "operation" to conclude that each attack had to be treated as a separate act. Appx123-124. But the court's cited definition of "campaign" as "a connected series of military operations forming a distinct phase of a war" confirms that a campaign is itself a

26

cognizable unit of action, even though it has component parts. The fact that a campaign consists of multiple operations does not mean each operation must be treated in complete jurisdictional isolation. At minimum, those definitions show that the statute does not compel the district court's atomized rule.

The statutory text also provides an additional reason the district court's atomized approach was too narrow. Section 1605A(a)(1) withdraws immunity in an action seeking money damages for personal injury or death "that was caused by an act of . . . extrajudicial killing . . . or the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). The statute does not say the plaintiff's injury must be caused by the same incident in which the killing occurred. It says the injury must be caused by material support for such an act. Here, Appellants' theory is that Iran provided material support to a coordinated Taliban-led campaign that included completed extrajudicial killings, and that the same materially supported campaign caused both fatal and nonfatal injuries. Even if *Borochov* forecloses treating a nonfatal incident, standing alone, as an "act of extrajudicial killing," it does not foreclose jurisdiction where the injuries were caused by material support for a campaign that indisputably included completed killings.

That distinction matters here. Plaintiffs' theory, as the district court recognized, was not that unrelated attacks in Afghanistan should be aggregated

arbitrarily. Rather, Plaintiffs argued that the attacks at issue were committed by a Taliban-led Syndicate engaged in a coordinated campaign of terrorist violence in Afghanistan and materially supported by Iran. Appz1191-124. The district court acknowledged that Plaintiffs argued the attacks were "part of a larger terrorist campaign backed by the same state sponsor and executed by the same terrorist group," and that they should therefore not be reduced to isolated "micro-attacks." Appx119-122.

The district court nevertheless concluded that each attack had to be treated as a separate act for purposes of 28 U.S.C. § 1605A. Appx122-124. But neither the text of § 1605A nor *Borochov v. Islamic Republic of Iran*, 94 F.4th 1053 (D.C. Cir. 2024), compelled that result. *Borochov* addressed a single terrorist attack and held that the plaintiffs there could not establish jurisdiction based on an attack that injured them but did not kill anyone. *Borochov*, 94 F.4th at 1060–61. It did not address the distinct question whether, in a case alleging a coordinated terrorist campaign, the relevant "act" must always be defined at the narrowest possible level of a single violent incident.

That question is especially important because § 1605A extends not only to an "act of . . . extrajudicial killing," but also to "the provision of material support or resources for such an act." 28 U.S.C. § 1605A(a)(1). Where plaintiffs allege that a

foreign state materially supported an organized terrorist network engaged in a coordinated campaign of violence, the jurisdictional inquiry should not be reduced mechanically to whether each isolated incident, viewed without regard to the larger campaign alleged, independently resulted in death. Plaintiffs' theory was that Iran's support enabled a coordinated Taliban-led campaign that included extrajudicial killings and that the attacks injuring Appellants were part of that campaign. Appx119-124. The district court rejected that campaign-based theory and instead treated each attack as a separate act for purposes of § 1605A. Appx119-124.

At a minimum, the district court should not have treated the question as foreclosed. Plaintiffs presented a record-based argument that the attacks were component parts of a coordinated terrorist campaign carried out by the same Syndicate, in the same conflict, and with the same alleged state sponsor. Appx119-124. By holding that each attack must be treated as a separate act for purposes of § 1605A, the district court resolved against Appellants the very question in dispute.

Nor does Appellants' campaign theory create boundless liability. Appellants are not arguing that every attack carried out by the Taliban over many years necessarily constitutes the same "act" for purposes of § 1605A. The question is factual and record-based: whether the attacks at issue here were part of a coordinated campaign materially supported by Iran. The district court has ordinary tools to police

that line based on evidence of coordination, organizational structure, and the manner in which support was provided. Recognizing a campaign-based theory in this case therefore does not eliminate limiting principles; it applies them to the record actually alleged and found here.

Because the district court analyzed the attacks only as separate acts and rejected Plaintiffs' argument that they were part of a coordinated terrorist campaign materially supported by Iran, its jurisdictional ruling should be reversed.

## CONCLUSION

For the foregoing reasons, the Court should reverse the district court's dismissal of Appellants' claims for lack of subject-matter jurisdiction and remand for further proceedings.

Respectfully Submitted,

<div style="margin-left:40%">

*s/ Robert L. Sirianni, Jr., Esquire*
Robert L. Sirianni, Jr., Esquire
BROWNSTONE, P.A.
Attorney for Appellants
PO Box 2047
Winter Park, Florida 32790
(p) 407-388-1900
(f) 407-622-1511
RobertSirianni@brownstonelaw.com

</div>

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this brief contains 5730words.

I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman.

Dated: March 26, 2026

Respectfully submitted,
*s/ Robert L. Sirianni, Jr., Esquire*
Robert L. Sirianni, Jr., Esquire

**CERTIFICATE OF SERVICE**

I hereby certify that, on March 26, 2026, I electronically filed the foregoing Brief for Appellants with the Clerk of the Court for the United States Court of Appeals for the District of Columbia Circuit by using the CM/ECF system.

*s/ Robert L. Sirianni, Jr., Esquire*
Robert L. Sirianni, Jr., Esquire